UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO.: 4:06CV-35-M

LANCE L. FERRIS and KATHLEEN L. FERRIS                    PLAINTIFFS

v.

TENNESSEE LOG HOMES, INC., et al.                         DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon various pretrial motions [DN 118, 119 and 120] filed by the plaintiffs, Lance L. Ferris and Katheleen L. Ferris, and the defendant, Tennessee Log Homes, Inc. ("TLH"). Fully briefed, these motions are ripe for decision.

### A. FERRIS MOTION IN LIMINE [DN 119]

The Ferrises have moved to exclude portions of Barry Houseal's testimony. Barry Houseal, a professional engineering expert retained by TLH, plans to testify about the observations he made during a visual inspection of the Ferris' home and a review of documents related to the purchase of their home. He also plans to respond to many of the Ferris' chief complaints about the construction of their Tennessee log home and provide an opinion as to the cost to repair any defects. The Ferrises object to many of the conclusions identified by Houseal in his report. They argue that he is planning to offer improper *legal* opinions which are inadmissible. TLH disagrees. It contends that Houseal's testimony is proper under Fed. R. Evid. 704 because it is permissible for experts to render opinions on "ultimate issues."

Rule 704(a) provides that "testimony in the form of an opinion or inference otherwise

admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Traditionally, courts excluded this type of "ultimate issue" testimony upon the belief that it "usurp[ed] the province of the jury." Fed. R. Evid. 704 Advisory Committee note. Finding this to be "empty rhetoric," the Advisory Committee abolished the rule in favor of admitting such testimony "when helpful to the trier of fact" and otherwise admissible. Id. Although testimony is not inadmissible merely because it provides an opinion as to an "ultimate issue," the testimony may be inadmissible on other grounds.

> Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. *These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach*, somewhat in the manner of the oath-helpers of an earlier day. They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria. Thus the question, "Did T have capacity to make a will?" would be excluded, while the question, "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" would be allowed.

Id. (emphasis added); see also 1 George E. Dix, et al., McCormick on Evidence § 12 (Kenneth S. Broun ed., 6th ed. 2006) [hereinafter McCormick on Evidence]. Therefore Rule 704 "does not provide that witnesses' opinions as to the legal implications of conduct are admissible." Terres v. County of Oakland, 758 F.2d 147, 150 (6th Cir. 1985) (quotation omitted). Such testimony is improper because "[i]t is not for witnesses to instruct the jury as to applicable principles of law, but for the judge." Id. (quotation omitted). And where a witness's testimony contains legal conclusions, it "convey[s] the witness' unexpressed, and perhaps erroneous, legal standards to the jury." Id.

But "[t]he task of separating impermissible questions which call for overbroad or legal

2

responses from permissible questions is not a facile one." Id. at 151 (quotation omitted). "The best resolution of this type of problem is to determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular. If they do, exclusion is appropriate." Id. (citing United States v. Hearst, 563 F.2d 1331, 1351 (9th Cir. 1977)). Therefore, in Torres, it was improper for an expert witness to be asked whether the plaintiff "had been discriminated against because of her national origin." Id. The question tracked the language of the statute that prohibited such conduct and "the term 'discrimination' has a specialized meaning in the law and in lay use the term has a distinctly less precise meaning." Id. (citation omitted). Likewise, it is improper for an expert to opine "that certain behavior by defendant . . . amounts to negligence under the law," Shahid v. City of Detroit, 889 F.2d 1543, 1547 (6th Cir. 1989), and that a contract has certain "legal significance," Loeb v. Hammond, 407 F.2d 779, 781 (7th Cir. 1969).

Here, certain components of Houseal's report contain improper legal conclusions. His conclusion as to the legal effect and significance of the purchase agreement is improper. It is not for Houseal to opine as to what TLH's responsibilities were pursuant to the terms of the contract, as the interpretation of a contract is a legal question. See 3D Enters. Contracting Corp. v. Louisville & Jefferson County Metro. Sewer Dist., 174 S.W.3d 440, 448 (Ky. 2005). Similarly, it is improper for Houseal to opine that "TLH is not responsible for any of the complaints of construction defects." Again, this opinion states a legal conclusion and would not be helpful to the jury. These types of opinions are improper and TLH is instructed not to elicit such testimony from Hosueal at trial. However, this limitation is a narrow one. As

3

recognized by the Sixth Circuit in Torres, "a more carefully phrased question could . . . elicit[] similar information and avoid[] the problem of testimony containing a legal conclusion." Torres, 758 F.2d at 151. For instance, TLH argues that Houseal should be permitted to testify that the materials provided by TLH to the Ferrises did not contribute to the "as-built construction quality issues" of their home. It also contends that Houseal should be able to remind the jury that TLH only supplied the materials, but did not construct the home. Because testimony of this nature does not contain legal conclusions, it is permissible. Similarly, TLH is allowed to elicit testimony from Houseal regarding TLH's procedure for obtaining modifications to the Tellico design plans and whether such a procedure complies with common industry practice. "Experts are allowed to testify about custom and usage in an industry." Horton & Assocs. v. SMG, Inc., No. 00 C 3965, 2001 WL 36098474, at *1 (N.D. Ill. Jan. 8, 2001) (citation omitted). Therefore, the Ferris' motion in limine [DN 119] is **GRANTED in part** and **DENIED in part**.

## B. TLH Motion in Limine [DN 120]

TLH seeks to preclude the testimony of several witnesses and to exclude various exhibits that the Ferrises plan to introduce at trial.

### Testimony from or about Dennis and Laurie Smith

The plaintiffs plan to introduce the testimony of the Smiths, another couple who purchased a log home package from TLH. The Smiths, like the Ferrises, were disappointed in their log home and arbitrated a claim against TLH for defective design. The arbitrator awarded damages in favor of the Smiths. The defendants seek to exclude the testimony of the Smiths

because it is not relevant or is otherwise inadmissible "prior acts" under Fed. R. Evid. 404(b). The plaintiffs, who argue that the exclusion of the Smiths' testimony would cause them a substantial injustice, contend that the Smiths' testimony is admissible. Although Rule 404(b) precludes "[e]vidence of other crimes, wrongs, or acts . . . to prove action in conformity therewith," the Rule does permit such evidence for "other purposes." Fed. R. Evid. 404(b). Here, the Smiths plan to testify that an agent for TLH represented that TLH builders would be constructing their home, but that the statement was untrue. (See Laurie Smith Dep. 6:1-9:7, Sept. 24, 2008.) Because the Ferrises indicate that TLH and the Zaras also made similar untrue representations to them, they believe that the Smith's testimony will help show that these misrepresentations were not innocent mistakes, but rather purposefully made with knowledge that the representations were untrue, and part of a scheme or plan by TLH to defraud their customers.

Before a district court can introduce evidence under Rule 404(b), it must make three findings. "The district court must find that the prior bad acts occurred (a finding reviewed for clear error); that the evidence helps prove a material issue (a finding reviewed de novo); and that the evidence passes the balancing test of Rule 403 (a finding reviewed for abuse of discretion)." United States v. Gold Unlimited, Inc., 177 F.3d 472, 488 (6th Cir. 1999) (citing United States v. Jobson, 102 F.3d 214, 220 (6th Cir. 1996)). Here, the Smith's deposition testimony is more than sufficient evidence to support a finding by the jury that the "prior act" occurred fulfilling the first prerequisite. See Heddleston v. United States, 485 U.S. 681, 689-90 (1988) (court need not find that the prior act occurred by the preponderance of the evidence).

5

The Court also finds that the Smiths' testimony would help prove a material issue–that TLH had a scheme or plan to defraud their customers and that they therefore knew their agents were misrepresenting the availability of TLH builders. See 1 McCormick on Evidence § 197 ("In cases alleging fraud or misrepresentation, proof that the defendant perpetrated similar deceptions frequently is received in evidence."). The evidence, if believed by the jury, would show that two different sales agents for TLH made the same representation at roughly the same period in time, yet the representation in both cases turned out to be untrue. In other words, the evidence might circumstantially establish TLH's knowledge that their sales agents were making misrepresentations to their customers.[1]

Although the Court is aware that in any case where it allows the introduction of "prior acts" evidence the jury may use it for improper purposes, see United States v. Jenkins, 593 F.3d 480, 486 (6th Cir. 2010) (citation omitted), the Court must weigh "'whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other facts appropriate for making decision of this kind under 403.'" Old Chief v. United States, 519 U.S. 172, 184 (1997) (quoting Fed. R. Evid. 404 Advisory

---

[1] The cases cited by TLH in support of its motion do not require a different finding. In Schrand v. Fed. Pacific Elec. Co., 851 F.2d 152 (6th Cir. 1988), the Sixth Circuit merely found that based upon the facts of that case, which involved allegations of age discrimination, not fraud, evidence that other workers of the company were terminated based upon their age was not relevant to show that a different decisionmaker, at a different jobsite, at a different time, terminated the plaintiff based upon his age. Schrand, 851 F.2d at 156. And Buford v. Howe, 10 F.3d 1184 (5th Cir. 1994) actually supports the admissibility of the Smiths' testimony. There, the plaintiff alleged negligence and fraudulent inducement after her doctor recommended that she have a hysterectomy. Buford, 10 F.3d at 1188. Affirming the trial court's decision under Rule 404(b) to exclude at trial evidence of other hysterectomies performed by the doctor to prove negligence, the Fifth Circuit noted that the plaintiff did not plead fraud with particularity, but stated that "[o]nce Mrs. Buford amends her pleadings" to properly allege fraud, "she can present evidence of the other hysterectomies . . . ." Id. n.5.

Committee note). Because TLH's knowledge of the falsity of the representations is an essential element of the Ferris' fraud claim, and as it does not appear that the evidence will be cumulative, the Court finds that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

On the other hand, the Court does share TLH's concern that a mini-trial over the Smiths' claim would confuse the issues and potentially mislead the jury. For example, testimony from the Smiths about the details of the shoddy workmanship, their successful claim for defective design, and the difficulty in getting payment from TLH after winning a judgment would be unnecessary to prove that TLH had knowledge that its sales agents were making misrepresentations to its customers. Here, however, the Ferrises represent that "the testimony of the Smiths will be limited to their dealings with TLH as it relates to the purchase of their log home, including their interactions with their dealer and the advertisements and representations of TLH, thereby providing insight into the knowledge, plan, and intent of TLH." (Pls.' Resp. Mot. In Limine at 4.) So long as the Smiths' testimony is limited to these issues, the Court finds that their testimony is permissible. This portion of TLH's motion is therefore **DENIED**.

Exhibits to Dennis and Laurie Smith's Depositions

TLH indicates that various exhibits to the Smiths' depositions have been identified by the Ferrises as exhibits they plan to introduce at trial. TLH argues that these exhibits are irrelevant whereas the Ferrises argue that "the accompanying exhibits demonstrate that TLH was aware that it was misleading its customers yet continued to use the same methods with the knowledge that its advertisements and the representations of its agents were misleading." (Pls.'

7

Resp. to Mot. In Lim. at 7.) After reviewing the exhibits in question, the Court substantially agrees with TLH. An undated letter from the Smiths to the Ferrises regarding their experience with TLH (Dennis Smith Dep., Exh. 1) is not only hearsay, but irrelevant. The views expressed by the Smiths solely to the Ferrises do not make it any more or less likely that TLH was aware that alleged representations made by its agents were false. The same conclusion applies to a building proposal submitted by the Smiths to Diversified Construction Services (Laurie Smith Dep., Exh. 1,) a copy of a Quality & Service Survey in which the Smiths identify purported misrepresentations made by TLH and its agents, *but that was never submitted to TLH* (Id., Exh. 2,) and a list of notes maintained by the Smiths during the building of their log home (Id., Exh. 3.) Similarly, the letter submitted by the Smiths to the Building Systems Council, (Dennis Smith Dep., Exh. 2,) written by the Smiths several years after the Ferris' encounter with the Zaras, does not make it any more likely that TLH was aware of the alleged misrepresentations or the falsity of those representations at the time they were made to the Ferrises. What TLH may have become aware of after the Ferris' purchase does not establish what TLH was aware of at the time of the purchase. Lastly, the Ferrises argue that the advertisements attached to Dennis Smith's deposition (Dennis Smith Dep., Exh. 4) are admissible because reliance upon the advertisements by other reasonable purchasers of log home packages helps prove that the Ferris' reliance was reasonable. Even if the evidence is not admissible to establish that the plaintiffs' reliance was reasonable, in order for the Smiths to give a full and complete explanation to the jury of how they came to purchase a log home package from TLH, it would not be improper for them to discuss the advertisements they saw. This component of TLH's motion in limine is

**GRANTED in part** and **DENIED in part**.

<u>Testimony From or About Don Duerring</u>

Don Duerring, who apparently at one point in time was a TLH dealer, was identified by the Ferrises in supplemental discovery on November 17, 2008, as a potential witness "who is expected to testify concerning his becoming a TLH dealer, his personal and business experience with the Defendant TLH . . ., his knowledge of the corporation's marketing, dealer relations and customer relations matters." (Pls.' Rule 26(a)(1) Disclosures Supp. at 1.) In a January 15, 2010 settlement demand letter, the Ferrises provided further information about his testimony: he will be testifying that he "was victimized also by TLH's representations that it would construct Mr. Duerring's model home in a lake development he was beginning, and he suffered damages like the Smiths and Ferrises and his model home is structurally unsound, like the Smiths' home before the township required it to be razed . . . ." (TLH's Mot. in Lim. at 12.) TLH argues that "the true nature of Mr. Duerring's expected testimony was not identified until January 15, 2010 and TLH has been denied the opportunity to depose Mr. Duerring and fully discover the nature of his testimony and to prepare adequate cross-examination." (<u>Id.</u>) The Ferrises respond by arguing that the information provided during discovery was more than sufficient.

The Court finds that TLH's argument regarding the sufficiency of the Ferris' pretrial disclosure to be without merit. The Advisory Committee note to Rule 26(a)(1)(A), for example, indicates that all that is required in a disclosure is a brief statement regarding "the general topics on which such persons have information . . . ." Fed. R. Evid. 26(a)(1)(A) 1993 Amendments, Advisory Committee note. Therefore, "a party is not required to provide a detailed narrative

9

of the potential witness' knowledge . . . ." Lipari v. U.S. Bancorp, N.A., No. 07-2146-CM-DJW, 2008 WL 2874373, at *2 (D. Kan. July 22, 2008). Instead, the disclosure need only "provide enough information that would allow the opposing party to help focus the discovery that is needed and to determine whether a deposition of a particular person identified as a potential witness might be necessary." Id. To the extent the initial disclosure may have lacked precision, it was nevertheless sufficient to allow TLH to focus its discovery and assess whether a deposition was necessary. It specifically stated that the witness had information about his personal and business relationship with TLH and knowledge of the company's marketing and dealer relations. This should have been sufficient to warrant a further inquiry into Mr. Duerring's testimony either via an interrogatory propounded upon the Ferrises or through a deposition of Mr. Duerring. And for the same reasons identified by the Court regarding the Smiths' testimony, the Court also finds that Mr. Duerring's testimony is admissible. According to the Ferris' proffer, Mr. Duerring will be testifying that TLH misrepresented the availability of TLH builders, a topic which this Court has already found to be relevant for purposes of showing a plan or knowledge on the part of TLH. This component of TLH's motion is **DENIED**. Nevertheless, like the Smiths, Mr. Duerring's testimony should be limited only to the matters surrounding these alleged misrepresentations. Other problems he may have had regarding defects in the building of his home are irrelevant.

### TLH's Termination of the Zaras' License

TLH seeks to exclude evidence related to its termination of the Zaras' license under Fed. R. Evid. 407 which provides:

> When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

Fed. R. Evid. 407. Unless another appropriate purpose for admitting evidence of subsequent remedial measures is identified, "[e]vidence that an employer subsequently discharged an employee accused of causing a plaintiff's injury may be properly excluded as a subsequent remedial measure under Rule 407." Nolan v. Memphis City Schools, 589 F.3d 257, 274 (6th Cir. 2009) (citing Hull v. Chevron U.S.A., Inc., 812 F.2d 584, 586-87 (10th Cir. 1987)). The Ferrises claim that they would use the information to prove that TLH had the ability control the Zaras' actions, presumably to establish an agency relationship between TLH and the Zaras.

It is true that to determine whether an agency relationship exists, the right to control the details of the work is the most important factor. See, e.g., Sam Horne Motor & Implement Co. v. Gregg, 279 S.W.2d 755, 758 (Ky. 1955). The Court does not find, however, that the actual termination of TLH's relationship with the Zaras is relevant to establish the type of control it could exercise over the details of the Zaras' work during the relationship. It merely establishes that TLH took steps to end the relationship consistent with its agreement with the Zaras. That is, the only purpose for introducing this evidence is to impermissibly show that TLH took a subsequent remedial measure. Therefore, the fact that TLH terminated the relationship is not admissible. This aspect of TLH's motion in limine is **GRANTED**. The Ferrises also argue that this evidence may be relevant for purposes of impeachment. Although the Court doubts that

evidence related to the Zaras' termination will be relevant for purposes of impeachment, the Court **RESERVES** this portion of TLH's motion until trial where the Court will be in a better position to rule upon TLH's objection after each witness's testimony is developed.

### Testimony and Documents Relating to the "Stott & Masterson" Projects

The Stotts and the Mastersons were other purchasers of log home packages who, like the Ferrises, purchased their package from the Zaras. The Zaras apparently assisted the purchasers with the construction of their home which, according to TLH representatives, turned out to be a "disaster." As a result, TLH sent various correspondence to the Zaras requesting that they extricate themselves from the construction of log home packages. TLH argues that evidence related to these purchases is irrelevant. Not only did the purchases occur approximately three years earlier, but the evidence related to those projects does not assist the Ferrises in proving their fraud claim. The Ferrises only response is that "the Stott and Masterson projects is direct evidence having a tendency to make the existence of the misrepresentations of TLH by and through the Zaras more probable than not." However, nothing in the exhibits related to the Stotts and Mastersons shows what types of misrepresentations were made to them, if any, and therefore any testimony or exhibits related to the Stotts and Mastersons are irrelevant. This aspect of TLH's motion is **GRANTED**.

### Testimony and/or Documents Relating to Gary Davis

TLH seeks to exclude any testimony and documents relating to the Gary Davis project, another purchaser of a log home package through the Zaras. It insists that this evidence would be related to an irrelevant matter–the method the Zaras used in calculating a promotional

12

payment by TLH. The Ferrises disagree and argue that the representations made by the Zaras "show that TLH was representing that it provided 'log erection' services and the interrelation between this and TLH's dealing with Larry Jones." The Court agrees with TLH. The exhibits reviewed by the Court show that TLH or the Zaras may have paid a builder to provide log erection services to Gary Davis, but the documents do not establish these services involved any misrepresentations made to Gary Davis, the relevant issue here. Accordingly, this portion of TLH's motion is **GRANTED**.

Testimony and/or Documents Relating to the Steve Cannella Referral

TLH seeks to exclude testimony and/or documents relating to the Steve Cannella referral on grounds that it is irrelevant. The Ferrises have not responded to this argument. Therefore, this component of TLH's motion is **GRANTED**.

Advertisements

TLH seeks to exclude two sets of advertisements that the Ferrises plan to introduce at trial. It argues that the first set, advertisements from various log home magazines, should be excluded because they contain no date, and therefore there is a lack of foundation for their admissibility. It argues that the second set, advertisements from TLH's website, should be excluded because they were obtained by the Ferrises several years after they purchased their log home package.

The Court agrees with TLH that only those advertisements relied upon by the plaintiff before it purchased its log home package are relevant to their fraud claim. See, e.g., Moore, Owen, Thomas & Co. v. Coffey, 992 F.2d 1439, 1444 (6th Cir. 1993) (a claim for fraud is only

actionable if the representations are made with knowledge that they are false and only if actually relied upon by the plaintiff). Although some of the advertisements may have been retrieved for purposes of this litigation after the Ferrises purchased their log home package, the relevant inquiry is whether the Ferrises saw the same advertisements before they purchased their home. It is unclear at this point which advertisements, if any, were actually relied upon by the Ferrises. But so long as they testify that they relied upon the advertisements, they are admissible. This matter is **RESERVED** until trial.

### Damages

TLH contends that the Ferrises have not sufficiently itemized their damages. As a result they argue that at trial "the Ferris' proof of damages and request for relief be limited to that which the Ferris' experts have identified." (TLH's Mot. in Lim. at 23.) At a pretrial conference in this matter, the Ferrises agreed to provide a more detailed itemization of the damages they will seek at trial. According, this aspect of TLH's motion is **DENIED as moot**.

### Testimony From or About Bob and June Terry

TLH seeks to exclude testimony from or about Bob and June Terry who were identified in the Ferris' initial disclosures and more recent witness list. Because the Ferrises at the pretrial conference in this matter have agreed to withdraw these individuals from their witness list, this matter is **DENIED as moot**.

### C. TLH MOTION TO PERMIT JURY INSPECTION OF PROPERTY [DN 118]

TLH has moved to allow the jury to inspect the Ferris' log home. At the pretrial conference in this matter, the parties agreed to take a joint video of the Ferris' home, or if they

cannot agree on the content of the video, that they will be presenting separate videos. Accordingly, TLH's motion to allow the jury to inspect the property is **DENIED as moot**.

cc: Counsel of Record