UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO.: 4:06CV-35-M

LANCE L. FERRIS and KATHLEEN L. FERRIS                               PLAINTIFFS

v.

TENNESSEE LOG HOMES, INC., et al.                                    DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon a motion in limine [DN 133] by the defendant, Tennessee Log Homes, Inc. ("TLH"), a request for alternative relief [DN 143] filed by the plaintiffs, Lance L. Ferris and Kathleen L. Ferris, and a motion to strike [DN 144] filed by TLH.

## I. MOTION IN LIMINE

TLH seeks to exclude evidence and testimony related to disciplinary action taken against one of its experts, Larry Halcomb. It argues that since the disciplinary action taken against Halcomb does not relate to his character for truthfulness or untruthfulness such evidence and testimony is not admissible under Fed. R. Evid. 608. In response, the Ferrises argue that evidence of the disciplinary actions taken against Halcomb is a proper subject for cross-examination as it is relevant to show that Halcomb's assessments are unreliable.

### A. SUBSTANCE OF DISCIPLINARY ACTION

Halcomb is a certified residential real property appraiser in Kentucky. On or about October 3, 2003, the Kentucky Real Estate Appraisers Board filed two grievances against Halcomb related to his appraisal of a multi-family dwelling conducted on February 11, 2003.

According to the Board, Halcomb used an improper depreciation rate and used improper comparable properties in order to determine the value of the subject property. Halcomb, in his answer to the Board, admitted many of the deficiencies alleged by the Board. As a result of these grievances, the Board and Halcomb entered into an agreed order in which the Board determined that Halcomb "had failed to comply with Uniform Standards of Professional Appraisal Practice Rules." Halcomb agreed to pay a $250 fine.

On or about November 29, 2004, the Board filed two more grievances against Halcomb related to two appraisals he conducted between July 2000 and August 2000. Regarding an August 30, 2000 appraisal, the Board alleged that Halcomb was not sufficiently licensed to make the appraisal, that Halcomb had "grossly overrstated" the gross building area of the assessed property, and that he overstated the value of the property by $644,000. Regarding an assessment performed by Halcomb on July 28, 2000, the Board alleged that Halcomb had substantially misstated the size of the property being appraised. It also alleged various other errors in the report. In order to resolve the matter, the Board and Halcomb entered into an agreed order in which the Board determined that Halcomb "had failed to comply with Uniform Standards of Professional Appraisal Practice Rules." Halcomb also agreed to pay a $1,000 fine in addition to a 30 day suspension of his certification.

### B. DISCUSSION

Contrary to the position of the plaintiffs, courts routinely exclude evidence about the prior litigation history and the disciplinary records of expert witnesses. See, e.g., Morrow v. Stivers, 836 S.W.2d 424, 428-29 (Ky. Ct. App. 1992) (evidence that a medical doctor's license

was suspended was properly excluded because such evidence did not reflect on the expert's knowledge or ability to testify on the matters at hand); State v. Lindh, 468 N.W.2d 168, 349-50 (Wis. 1991) (exclusion of evidence related to misconduct on part of expert was not an abuse of discretion); Heshelman v. Lombardi, 454 N.W.2d 603, 609 (Mich. Ct. App. 1990) ("the mere fact that someone has been named as a defendant in a malpractice lawsuit may not be used to impeach his credibility as an expert witness.") (citation omitted); Armstrong v. Hrabal, 87 P.3d 1226, 1241-42 (Wyo. 2004) (exclusion of prior malpractice claim against expert was not an abuse of discretion); Locke v. Vanderark, 843 P.2d 27 (Colo. Ct. App. 1992) (trial court erred when it allowed an expert to be cross-examined concerning the fact that he had been sued for malpractice at least six times).

Nevertheless, questioning an expert about prior professional misconduct or disciplinary actions taken against the expert will be permitted when doing so is of sufficiently probative value. Thus, in Ireland v. Hodes, No. 2005-CA-002095-MR, 2006 WL 3040844, at *3 (Ky. Ct. App. Oct. 27, 2006), rev'd on other grounds, 2009 WL 1830758 (Ky. 2009), the court held that an orthopedic expert opining that the defendant committed acts of negligence during a spinal surgery, could be cross-examined concerning spinal surgical complications experienced by the expert's own patients. Noting that Kentucky's version of Rule 611(b), like the Federal rule, "clearly permits cross-examination upon any issue relevant to the case," the court concluded that "the complications suffered by [the expert's] spinal patients [were] reasonably relevant to [his] expertise." Id. And in Hock v. N.Y. Life Ins. Co., 876 P.2d 1242 (Colo. 1994), the court concluded that an expert, who opined that a psychiatric patient was maligning based upon his

3

analysis of certain psychometric test data, could be cross-examined regarding a prior lawsuit in which the reliability of the expert's "procedures and the expert's ability to interpret the[] [test results] were previously questioned . . . ." Id. at 1257. Therefore, "the questions regarding the [prior lawsuit] were relevant to evaluating the expert's credibility in determining the [patient's] mental state." Id.

As explained by the court in Kostel, the difference between admitting such evidence and excluding it turns upon the facts of each particular case. In Kostel, a spine surgeon was sued for malpractice. The plaintiff alleged that during the spine surgery, the doctor got "lost in her spine" and mistakenly performed surgery on the wrong vertebrae. Kostel, 756 N.W.2d at 368. At trial, in addition to testifying as a fact witness, the doctor also wanted to testify as an expert about the appropriate standard of care in such cases. Id. at 369. In a motion in limine, the doctor sought to exclude evidence of his prior surgeries where those surgeries were also performed upon the wrong part of the patients' spine. Id. In addition, the doctor also sought to exclude evidence that his license was placed on probationary status after he entered into a stipulation with the state's regulatory body. Id. The trial court agreed that the evidence should be excluded so long as the doctor did not testify as an expert regarding the appropriate standard of care. Id. at 370.

On appeal, the doctor argued that an inquiry into the other pending malpractice suits and the proceedings of the regulatory body would violate Rule 608(b). Id. The appellate court disagreed. Although "inquiry into an expert's *alleged* mistakes or connection to *unrelated* adverse claims do not impact on his credibility or character for truthfulness . . . ., evidence

4

contrary to the representation of the witness's expertise in the field for which he offers his opinion at bar is relevant to his competency and does impact credibility, and therefore, is appropriate inquiry." Id. In such cases it is "'imperative that opposing counsel be afforded the opportunity to cross-examine [the expert] to expose the weaknesses in his knowledge, skill, experience, training, or education.'" Id. at 372 (quoting Wischmeyer v. Schanz, 536 N.W.2d 760, 765-66 (Mich. 1995)). The court found that the prior surgeries, which were similar to the one at issue in the case, were admissible for purposes of cross-examination. Id. at 374. The doctor admitted that he had made mistakes during the prior surgeries, he entered into a stipulation regarding his license status with the regulatory board, and the regulatory board sanctioned him for malpractice. Id. Furthermore, the testimony would not have been based upon mere allegations of negligence, but the doctor's own admissions of malpractice; nor were the prior surgeries remote in time or unrelated to the type of surgery being litigated. Id. "[T]his inquiry would have related to [the doctor's] competency and thereby would have been relevant to the assessment of his credibility in the eyes of the jury." Id.

Here, the Court finds that the plaintiffs' cross-examination regarding Halcomb's prior disciplinary proceedings would be probative of Halcomb's competency. TLH notes that Halcomb's prior disciplinary proceedings involved different types of properties, such as multi-family and commercial properties, rather than single-family homes. However, the mistakes alleged to have been made in Halcomb's assessment of the Ferris' property are related to the same types of mistakes he admittedly made in the assessment of the properties for which he was disciplined. Primarily, the plaintiffs will attempt to show that the comparable properties

5

Halcomb used in performing his assessment of the Ferris' property were improper, as were the comparable properties he used during his February 11, 2003 assessment. The Court also finds that the prior assessments are not too remote in time so as to diminish the probative value of such evidence. This is simply not a case in which the proposed cross-examination will inquire into collateral or irrelevant matters. The cross-examination will "aid[] the . . . jury in appraising the witness's credibility and assessing the probative value of the witness's direct testimony." 1 George E. Dix, et al., McCormick on Evidence § 29 (Kenneth S. Broun ed., 6th ed. 2006).

## II. OTHER MATTERS

The alternative relief requested by the plaintiffs, Lance L. Ferris and Kathleen L. Ferris, in their response [DN 143] to TLH's motion in limine is also **DENIED** rendering moot TLH's motion to strike [DN 144]. The plaintiffs have alleged multiple deficiencies in Halcomb's expert report and proffered testimony such that his testimony at trial should be excluded under Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993) and Fed. R. Evid. 702. In particular, the Ferrises contend that Halcomb appraised the wrong lot, failed to account for subdivision restrictions, and failed to use reliable "comparable sales," along with multiple other errors. In their motion to strike, TLH notes that the Ferris' Daubert motion was filed 14 months beyond the deadline for filing such motions, and that their request for alternative relief should not been considered. Under Rule 702, the trial judge acts as a gatekeeper to ensure that expert testimony is both reliable and relevant. Mike's Train House, Inc. v. Lionel, L.L.C., 472 F.3d 398, 407 (6th Cir. 2006) (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999)). In determining whether certain testimony is reliable, the focus of the Court "must be solely on principles and

methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 595.  Here, the Court finds that the plaintiffs' arguments do not sufficiently undermine Halcomb's reliability so as to require exclusion under Daubert and Rule 702.

### III.  CONCLUSION

Accordingly, (1) the motion in limine [DN 133] by the defendant, Tennessee Log Homes, Inc. is **DENIED**; (2) the request by the plaintiffs, Lance L . Ferris and Kathleen L. Ferris, for alternative relief [DN 143] is **DENIED**; and (3) the motion by the defendant, Tennessee Log Homes, Inc., to strike [DN 144] is **DENIED as moot**.


cc:     Counsel of Record